DECISION
Before the Court is the petition of the plaintiff, Providence Teachers Union, Local 958 (PTU) for a preliminary injunction, as well as the objection thereto of the defendant, Blue Cross Blue Shield of Rhode Island (Blue Cross). Jurisdiction is pursuant to Super. R. Civ. P. 65.
 FACTS AND TRAVEL
PTU entered into a collective bargaining agreement with the City's School Board (Board) pursuant to which the City of Providence (City) would provide Providence teachers and their families with health care coverage under the City's plan for Union members. In order to facilitate this coverage, the City entered into a contract (Contract) with Blue Cross to provide and/or administer health care coverage to covered eligible employees of the City. That Contract was effective from July 1, 1998 to June 30, 2000. The Contract was amended once in December, 2000 to extend the term of the Contract and to increase the retention fee paid to Blue Cross.
The Contract was between the City and Blue Cross for administrative services. Blue Cross's only function under the Contract was to administer and process health care benefits provided to City employees by the City. There was never a contract between Blue Cross and PTU or any of its members. City employees, including members of PTU, were not Blue Cross subscribers. Rather, the City, which was self-insured, merely contracted with Blue Cross for administrative services.
The relevant document in this case is the Contract between the City and Blue Cross because it sets forth the responsibilities of Blue Cross as to the administration of the health plan provided to PTU by the City. During the collective bargaining process between PTU and the City, PTU agreed to the health care coverage offered it by the City. Namely, PUT agreed to the City's plan as administered but not provided by Blue Cross. As a result, PUT agreed that health care benefits afforded it by the City would be administered according to the Contract between the City and Blue Cross. The pertinent section of the Contract reads as follows:
 "Blue Cross shall provide[1] health care coverage hereunder to covered eligible employees of the City and their eligible dependents for the types of coverage identified in Exhibit A hereto, for claims incurred during the rating period. As a convenience to the City, at the City's request, Blue Cross will provide to the City summary descriptions of benefits which the City, if it so chooses, may distribute to its employees; provided, however, that those summaries are solely for the purposes of summarizing the benefits purchased by the City for its employees, and do not constitute a contract between the employees and Blue Cross. In all instances, Blue Cross's obligations are governed by this Agreement." (Emphasis added). Contract, paragraph 2.
City employees enrolled in one of two coverage plans: either the City Blue plan or the Classic coverage plan. Teachers covered under the Classic plan received a benefit booklet outlining the scope of their coverage while teachers covered under the City Blue plan received a two page summary of benefits. Both documents were prepared by Blue Cross. In addition, a Blue Cross employee made monthly visits to PUT's office in order to field questions regarding employee health benefits.[2]
On June 5, 2000 Marie A. Almago (Almago), the wife of a Union member, covered under the City health plan, was denied coverage for a blood test conducted in January, 2000. The test was ordered due to an abnormality seen on an abdominal CT scan. Almago had a mass in her pancreas, and her doctor ordered the test to further evaluate this documented abnormality. As a result of the coverage being denied, Almago initially requested from Blue Cross a copy of the agreement between Blue Cross and the City pursuant to which her coverage was denied. She further requested a copy of the Association Manual. Almago did not state any specific reason for the latter request.
Correspondence commenced among Almago, Blue Cross, and Blue Cross's attorney (Darigan). Communication continued for the next six months until Blue Cross decided to reimburse the laboratory which performed the blood test its charges. Blue Cross noted that this decision was based upon the fact that Almago's claim had become "an administrative nuisance.. [and] that any future request for coverage of such services under the same circumstances will be denied and will not be reimbursed." (Letter from Darigan to Almago of 12/1/00, at 2).
After Blue Cross refused coverage for Almago's January 2000 blood work, PUT brought this action against Blue Cross to compel production of the Blue Cross Blue Shield Association Policy Manual (Association Manual) so that Union members could have a better understanding of the scope of their health insurance coverage. This matter was before this Court for hearing on January 29, February 23, and April 4, 2001.
 STANDARD OF REVIEW
There are three issues that a hearing judge must address when deciding whether to grant a preliminary injunction. First, the moving party must demonstrate that it has a reasonable likelihood of succeeding on the merits of its claim at trial. The Fund for Community Progress v. United Way of Southeastern New England 695 A.2d 517, 521 (R.I. 1997) (citations omitted). The moving party must only make out a prima facie case and need not demonstrate a certainty of success. Id. In order to establish a prima facie case, the moving party must present some amount of evidence that, if unrebutted, is sufficient to satisfy the burden of proof on a particular issue." Paramount Office Supply Company, Inc. v. D.A. Mclsaac, Inc.524 A.2d 1099, 1102 (R.I. 1987) (quoting Nocera v. Lembo 397 A.2d 524
(R.I. 1979)).
Next, the party seeking the preliminary injunction must show that it will suffer some irreparable harm which is imminent and for which no adequate legal remedy exists to restore the plaintiff to its rightful position. The Fund for Community Progress v. United Way of Southeastern New England, 695 A.2d at 521. The moving party must present some "statistical evidence or other data" before the hearing judge may find irreparable harm or likelihood of success on the merits. Paramount Office Supply Company, Inc. v. D.A. Mclsaac, Inc., 524 A.2d at 1102.
Only after finding a likelihood of success and an immediate irreparable injury should the Court "consider the equities of the case by examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted and the public interest in denying or granting the requested relief" The Fund for Community Progress v. United Way of Southeastern New England, 695 A.2d at 521; In re State Employees' Unions, 587 A.2d 919, 925 (R.I. 1991). In this analysis the hearing judge should recognize that
 "the office of a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold matters approximately in status quo, and in the meantime to prevent the doing of any acts whereby the rights in question may be irreparably injured or endangered" (emphasis added). The Fund for Community Progress v. United Way of Southeastern New England 695 A.2d at 521 (quoting Coolbeth v. Berberian 313 A.2d 656, 659 (RI. 1974)).
The Court must deny a preliminary injunction when the moving party fails to meet the requirements set forth above by a preponderance of the evidence. Paramount Office Supply Company, Inc. v. D.A. Mclsaac, Inc. 524 A.2d at 1102. For instance, if the moving party fails to establish a likelihood of success, the Court's analysis ends there. If the moving party does not present a prima facie case, there is no need to consider a balance of the equities. The analysis is complete, and a preliminary injunction must be denied. The Fund for Community Progress v. United Way of Southeastern New England 695 A.2d at 521; Paramount Office Supply Company, Inc. v. D.A. Mclsaac, Inc., 524 A.2d at 1102.
Finally, preliminary injunctions, particularly mandatory injunctions, are an "extraordinary remedy." In re State Employees' Unions 587 A.2d 919, 925 (R.I. 1991) (quoting Brown v. 460 A.2d 7, 10 (RI. 1983)). They are generally disfavored when their effect grants the ultimate relief sought by the moving party. SW industries, INC. v. Aetna Casualty Surety Company646 F. Supp. 819, 823 (D.R.I. 1986) (citations omitted).
 MOTION FOR PRELIMINARY MANDATORY INJUNCTION
The ultimate issue in this case is not whether the government has a significant interest in protecting public health. That it most certainly does. Rather, the issue here is whether PUT has satisfied the three prerequisites for a preliminary injunction. A threshhold inquiry is whether or not PUT has a reasonable likelihood of succeeding on its claim at trial. Blue Cross initially asserts that PUT does not have a reasonable likelihood of success at trial because the two parties were never in privity of contract. Thus, Blue Cross asserts it owes no enforceable duty to PUT.
With respect to privity of contract, PUT claims that its members are subscribers or insureds of Blue Cross. It is a well-established principle of contract law that privity exists only among the bargaining parties to an agreement, and there is no right of recovery on a contract by a non-bargaining party. See Lombardi v. California Packing Sales Co.,112 A.2d 701, 702-703 (RI. 1955). However, non-bargaining parties may be entitled to certain contract rights if they are intended third party beneficiaries to the contract. Because there is a presumption that parties contract only for the benefit of themselves, the intent to benefit a third party must be clearly expressed in the contract. Davis v. New England Pest Control, 576 A.2d 1240, 1241 (RI. 1990). A beneficiary of a promise is an intended beneficiary if recognition of a right of performance in the beneficiary is appropriate to effectuate the intentions of the parties. See Restatement (Second) of Contracts § 302. An incidental beneficiary is one that is not intended by the parties. Forcier v. Cardello 173 B.R. 973, 985 (D.R.I. 1994). The rights of an intended third party beneficiary remain unvested, and thus unenforceable, until the third party beneficiary assents to those rights or otherwise ratifies the contract. Once ratified, there is no question that a third party beneficiary may sue on a contract made for his or her benefit. Davis v. New England Pest Control Co. 576 A.2d 1242. However, the contract rights of an intended third party beneficiary do not extend beyond those rights afforded parties to a contract.
The City had an agreement with PUT under which it provided health care coverage to eligible Union members and their families. The City, in turn, entered into a Contract with Blue Cross for administrative and processing services for the City health plan. Thus, the only party in actual privity of contract with Blue Cross was the City. PUT was never in privity of contract with Blue Cross because its members were simply employees of the City and not a bargaining party to the agreement. No contract exists between PUT and Blue Cross. As a result, PUT does not have any contractual obligations owed it by Blue Cross. Accordingly, it cannot seek to enforce obligations against Blue Cross.
The only party with appropriate standing to challenge Blue Cross on the Contract is the City because it entered into the Contract with Blue Cross. The Court does not need to determine the beneficiary status of PUT with regards to the Contract between the City and Blue Cross because assuming arguendo that the Court finds that PUT is an intended third party beneficiary to the contract, PUT is still not entitled to the relief it seeks. PUT seeks access to the Association Manual. The Contract does not require Blue Cross to provide the Association Manual to the City as a means for explaining the scope of the health insurance coverage. Rather, Blue Cross's bargained-for obligation is to provide benefit summaries at the City's request. The City can then decide whether to distribute those summaries to Union members. To allow PUT access to the Association Manual would afford PUT additional rights to those it would receive as an intended third party beneficiary to the Contract between the City and Blue Cross.
Blue Cross provided benefit booklets for both heath care plans offered by the City. When the City, not Blue Cross, decided against distribution of the booklet for the City Blue plan, Blue Cross provided a two-page summary of benefits for that plan. In addition, the facts show that a Blue Cross employee made monthly visits to the PUT office in order to field Union member questions regarding their health plan. In this instance, Blue Cross apparently exceeded the Contract requirements in order to assist people it did not owe any duty to, contractual or otherwise. According to the Contract between Blue Cross and the City, Blue Cross does not owe a contractual duty of disclosure to the City. Furthermore, no legal theory exists under which Blue Cross owes a duty of disclosure to PUT.
With respect to the relationship among PUT, the City, and Blue Cross, the City controlled the flow of information between Blue Cross and the Union members. PUT's dispute should be with the City, the entity with which it has privity of contract, and not with Blue Cross. If Union members wanted a health plan that discloses its Association Manual or something similar, then PUT should have made that demand during its own contract negotiations with the City. PUT is in privity of contract with the City and should have used that subsequent bargaining power at the appropriate time to effectuate all of the contract terms it deemed necessary.
Finally, PUT does not assert damages or injury as a result of not having access to the Association Manual. For instance, there is no evidence of any situation where a doctor's advice to undergo treatment was ignored by a Union member because he/she thought the treatment might not be covered. In fact, Almago's initial request to Blue Cross was for disclosure of the agreement between Blue Cross and the City under which her health insurance was administered. This request indicates that PUT understood that the City, and not PUT, was in privity of contract with Blue Cross. It further indicates that PUT and its members knew that their health care coverage was subject to the Contract between Blue Cross and the City, but that PUT itself was not a party to that Contract
After thorough review of the arguments and evidence submitted by the parties, this Court finds that PUT has not satisfied its burden for a preliminary injunction. Specifically, PUT fails to meet its burden of showing that it has a reasonable likelihood of success on its claim at trial or that it will be irreparably harmed, thus rendering a balancing of the equities moot. Accordingly, PUT's motion for a preliminary injunction is denied.
[1] "The reader should be aware that the use of the word "provide" in the language of the Contract between the City and Blue Cross is a misnomer because Blue Cross simply administers rather than provides health care benefits to PUT.
[2] Blue Cross, in fact, prepared a benefit booklet for both health plans. PUT decided not to use the booklet prepared for the City Blue plan because the letters "HM" appeared on the last page of the booklet. According to Joseph Almagno, Executive Director of PUT, "HM" indicates a "Healthmate" benefit. (Testimony of Joseph Amalgo). Healthmate was a contentious issue during a teachers' union strike, and as a result, PUT decided against distribution of the booklet. Instead, PUT decided to disseminate a short two page benefit summary prepared by Blue Cross for City Blue members. Now, after deciding against the use of the booklet available to it, PUT comes to court on behalf of its members seeking access to the Blue Cross Blue Shield Association Medical Policy Manual in lieu of the booklet which PUT itself decided not to release to City Blue members.