ALTHEA S. T. FINCH *vs.* RHODE ISLAND GROCERS ASSOCIATION.

NOVEMBER 17, 1961.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J. This is an action in assumpsit to recover in money the value of a round trip to Hawaii for two, which was the subject of a door prize, so called, won by the plaintiff at a food exhibition conducted by the defendant asso-

ciation. The case was tried before a superior court justice sitting without a jury and resulted in a decision for the plaintiff in the sum of $839.60 plus interest. It is before us on the defendant's bill of exceptions, the sole exception being to the decision.

The plaintiff's declaration is in three counts; the first being an allegation that defendant is indebted to plaintiff in the sum of $839.60, with interest as by the statutes in such case made and provided, and though often requested defendant has refused and continues to refuse to pay. Although not specifically designated in the declaration, this count rests on the provisions of G. L. 1956, §11-19-4, which read as follows:

> "The purchaser or receiver of any lottery ticket or certificate in the nature of a lottery ticket, or share in either, whether the same shall have been paid for in money, or however received, even though by way of gift, for the purpose of enabling the seller or giver of the same to dispose of any article or piece of property, real, personal or mixed, shall recover back the amount by him paid, or the value at which, according to the proof, the ticket or certificate may be reckoned in the transaction, as the case may be, from the person from whom the ticket or policy was purchased or received, in an action of the case for money had and received."

The second count is a book account and the third consists of the common counts.

The defendant answered with a general denial and pleaded specially that it was not liable as the alleged promise, being based on a lottery, was void; secondly that defendant had fulfilled its obligations, and any loss of benefit to plaintiff resulted from circumstances not within the control of defendant.

On defendant's motion plaintiff furnished a bill of particulars setting forth the nature of her claim. The plaintiff duly replied to defendant's special pleas by joining issue on both. The case then proceeded to trial.

The ultimate facts are not in dispute. The record establishes that defendant is a nonprofit trade association, the membership of which is composed of independent grocers. The association supplies its members with a monthly trade bulletin, acts as a clearing house for mutual problems and annually conducts a convention of members. In connection therewith, national and local food manufacturers, processors, distributors and the like, would exhibit their products and services to association members. Neither the convention nor the exhibition would be open to the general public.

It appears, however, that in 1959 the association was celebrating its fiftieth anniversary and decided to hold the exhibition at Rhodes-on-the-Pawtuxet, hereinafter referred to as Rhodes, inviting the public generally as a feature of its golden anniversary. The exhibition was held in April 1959 and as an added feature to enhance public interest arrangements were made for a drawing in the nature of a door prize. No consideration was required to participate in the drawing other than to attend as a spectator and fill out a card which presumably called for the name and address of the individual participating.

Mrs. May Lauder, executive director of the association for almost nine years, testified that she was informed by the manager of Rhodes that other groups previously conducting similar exhibitions had arranged with Transocean Air Lines to sponsor a trip via that company's facilities as part of such exhibitions; and that such an arrangement was made with its assistant vice-president to sponsor a round trip to Hawaii for two, in return for certain obligations to be assumed by the association. The defendant was to provide a booth for the airline in the foyer at Rhodes; sponsor a separate trip in the name of the association; pay $100 to Paul J. Cote, a local travel agent; help advertise the association's own trip; include a full page advertisement for the airline in the defendant's year book; and include

the airline in all releases and advertisements relating to the exhibition. It is undisputed that the defendant association fulfilled all of its obligations.

The plaintiff testified that she and her husband attended the exhibition on April 21, 1959, filled out a card at the airline booth, and on April 28 was informed by Cote that her name had been drawn as the winner of the Hawaiian trip. At least two tentative dates were arranged by him for plaintiff and her husband to make the trip, but illness in her household resulted in cancellations. Thereafter she apparently abandoned the idea of either of them using the tickets and sold them to Samuel Edge for $500. Edge, however, was unable to obtain confirmation from the airline and plaintiff returned his check.

Thereafter she so advised Mrs. Lauder, who was surprised that the Finches had not made the trip and intervened on plaintiff's behalf with Cote and the airline only to learn that it had suspended operations. The record clearly establishes that Cote, although an independent agent, was brought into the original negotiations by the airline to represent its interest; that Cote was requested by Mrs. Lauder to inform plaintiff of her good fortune because he was to handle arrangements thereafter; and that defendant had no contact with plaintiff until after the latter's experience with Edge.

The trial justice gave decision for plaintiff in the sum of $839.60, the agreed value of the trip, together with interest amounting to $44.08. In his decision he made no reference to the book account and defendant correctly contends that there is no evidence whatsoever to support that count.

The trial justice did pass on plaintiff's right to recover under the first count but did not rest his decision thereon, indicating that the statute in question was not applicable. The plaintiff did not prosecute a bill of exceptions and ordinarily could not now be heard on this phase of the trial

justice's decision. See *Weber* v. *American Silk Spinning Co.*, 38 R. I. 309. Since, however, defendant's sole exception is to the decision and under the special circumstances of this case it might be contended that it falls within those cases sustaining a decision of the trial justice, although the reason given was incorrect, we deem it advisable to pass upon the merits of plaintiff's first count.

Although grouped with those provisions of our general laws prohibiting lotteries, providing penalties and declaring all such to be null and void, the particular section in issue is unquestionably remedial in part. We are of the opinion, however, that it is applicable only in the case of a lottery and is intended as a deterrent to the holding or promoting of lotteries. It provides that *any* purchaser or receiver of a lottery ticket may bring suit to recover the value thereof without reference to whether the ticket was a winning one or even that the lottery be pending or an accomplished fact. The action is brought in case carrying with it six years within which to bring suit.

It is quite conceivable that the legislature intended to discourage lotteries by making those who promoted one liable for the recovery of all proceeds after the drawing had been had and the awards distributed. In any event recovery under the statute must be based on a lottery within the meaning of the first three sections of the chapter. The trial justice correctly found that in the case of the instant drawing there was no consideration within the meaning of *State* v. *Big Chief Corp.*, 64 R. I. 448, and therefore there was no lottery. The statute is one of creation and as such is to be strictly construed.

The trial justice found that there was a contract between defendant and Transocean Air Lines, and that defendant had fulfilled all of its obligations but that Transocean Air Lines had failed to honor its obligation to provide the Hawaiian trip to the winner of the drawing as agreed. He stated, "The Court is persuaded upon the facts involved

that two different conclusions can reasonably be urged and that it must resolve the question one way or the other." He added, "This must in turn depend upon the intentions of the parties as shown by their actions and words, it being clear that a third party beneficiary contract of the type urged by the plaintiff as being here present is legal and enforceable in this State."

The trial justice found that defendant entered into the contract for the benefit of plaintiff, arranging for the trip as an added inducement for the public to attend its exhibition. He further found that the trip constituted a "Door Prize," indicated that defendant had placed a Transocean Air Lines booth in the foyer, observed that the airline had no representative present, and concluded that although the booth was unmanned it was under the general supervision of defendant.

We are not convinced that these findings are in strict adherence to the facts as disclosed by the record. Rather, it seems to us that defendant and Transocean Air Lines contracted for the mutual benefit of each other—the former to make its exhibition more attractive to the public and the latter to advertise its facilities. Transocean Air Lines, it seems to us, was an exhibitor in keeping with the interest of all other exhibitors. The defendant had nothing to exhibit, but simply provided the exhibition as a vehicle for the displaying of wares to its members, and in this instance the general public also, by manufacturers, distributors, wholesalers and the like.

Furthermore, it seems clear from the record that Transocean Air Lines was fully as responsible for the selection of the foyer as was defendant, it being uncontradicted that exhibitors were permitted to select their own sites. The record also indicates that the booth was unmanned because Cote was vacationing and unable to be present. We entertain no doubt that he, although an independent travel agent, represented Transocean Air Lines once the agreement

between it and defendant was made. It is undisputed that he supplied the booth with Transocean literature, decorative materials, the cards to be filled out at the booth by visitors and the tickets to be used in the drawing. The actual drawing was made by an attending spectator.

The trial justice concluded, however, that the contract was one which had been made for the benefit of plaintiff and gave decision for her on the authority of *United States Fidelity & Guaranty Co.* v. *Rhode Island Covering Co.*, 53 R. I. 397, and *Blake* v. *Atlantic National Bank*, 33 R. I. 464.

We have carefully examined and considered those cases together with every other reported pertinent decision of this court and are not persuaded that they are controlling in the circumstances of the instant case. In each of them the beneficiary plaintiff prevailed if at all against that party to the contract whose promise was directly related to the benefit for which the plaintiff sued. In none that we have been able to discover was recovery had against the party to the contract whose consideration procured the promise which gave rise to the benefit claimed. In the instant case defendant by agreeing to certain conditions, all of which were fulfilled, procured from Transocean Air Lines the promise which plaintiff claimed was made for her benefit.

Apart from the interest of a third party, defendant on the state of the evidence could maintain an action against Transocean Air Lines for breach of the contract the parties had made. It cannot, however, be contended that the airline could maintain an action against defendant. We do not think that the third party beneficiary rule should, in justice or logic, be so extended as to embrace the circumstances of the case before us.

The plaintiff contends, however, that she is a donee beneficiary falling within the definition of that term as defined in 2 Williston, Contracts (3d ed.), §356, p. 284, "Such person is a donee beneficiary if the purpose of the promisee in obtaining the promise of all or part of the performance

330

thereof, is to make a gift to the beneficiary, or to confer upon him a right against the promisor to some performance neither due [nor supposed] or asserted to be due from the promisee to the beneficiary * * *."

We do not disagree with this definition, but we think it immaterial that plaintiff may be a donee beneficiary. We hold that such beneficiary may recover if at all only from that party to the contract whose promise if enforced inures to her benefit. See Restatement, Contracts §133 (1a), p. 151, wherein it is stated in the alternative, "or to confer upon him a right *against the promisor* to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary." (italics ours)

The plaintiff further argues, however, that if she is a donee beneficiary it has been held to be immaterial whether the consideration flows from the promisee or the promisor. She takes this to mean that she can bring suit against either party. It is a sufficient answer to this contention to point out that consideration flows from both parties, thus giving rise to the following question: On the consideration of which party must the beneficiary rely? We think that the beneficiary must look to the party that promised the benefit.

Finally the plaintiff cites *Munroe* v. *Providence Permanent Firemen's Relief Ass'n*, 19 R. I. 363, in support of her position. That case is of no assistance to her. It was an action brought by a widow in her capacity as administratrix of her husband's estate against the defendant on the latter's promise to pay benefits to the deceased. Furthermore the decision of the court was narrowly restricted in the subsequent case of *Gould* v. *United Traction Employees Mutual Aid Ass'n*, 26 R. I. 142.

The defendant's exception to the trial justice's decision is sustained, and on November 27, 1961 the plaintiff may appear in this court to show cause, if any she has, why the

case should not be remitted to the superior court with direction to enter judgment for the defendant.

*David B. Lovell, Jr.,* for plaintiff.

*Rabinowitz & Zimmerman, Coleman B. Zimmerman,* for defendant.