BARNSTEAD BROADCASTING
CORPORATION,

and

BAF Enterprises, Inc., Plaintiffs,

v.

OFFSHORE BROADCASTING
CORPORATION,
Defendant.

Civ. A. No. 94–2167 PLF.

United States District Court,
District of Columbia.

May 15, 1995.

Lewis J. Paper, Charles B. Molster, III, Carol A. Joffe, Washington, DC, for Barnstead Broadcasting.

Vincent J. Curtis, Jr., Rosslyn, VA, for BAF Enterprises.

Mary A. McReynolds, Washington, DC, for defendant.

## OPINION

FRIEDMAN, District Judge.

On October 21, 1994, the Court granted the motion of Barnstead Broadcasting Corporation ("BBC") for preliminary injunction and required Offshore Broadcasting Corporation to withdraw an Informal Objection that it had lodged against an application to assign a television station construction permit from BBC to BAF Enterprises, Inc. ("BAF"). The Court found that BBC and intervenor BAF had demonstrated that they were likely to succeed on the merits of their claim that Offshore had breached a 1990 written contract by which BBC and Offshore agreed (1) to withdraw Objections each had filed against construction permit extension applications that the other had filed with the FCC, (2) to refrain from filing further Objections concerning the construction of their respective stations, and (3) not to interfere

"in any way" with the construction of the other's station.[1]

Pending before the Court are eight dispositive or partially dispositive motions. BBC and BAF have moved for partial summary judgment on Count I of their respective complaints against Offshore, which allege breach of the 1990 written contract. BBC and BAF also have moved to dismiss all of Offshore's counterclaims against them, which relate to breach of the 1990 written contract, breach of an alleged 1990 oral agreement, fraud and deceit related to the negotiation and consummation of those two agreements, and interference with business relations. BBC has moved for partial summary judgment on Count I of the Offshore counterclaim which alleges breach of the 1990 written contract and an alleged 1990 oral agreement. Finally, Offshore has cross moved for summary judgment as to each plaintiff's contract and fraud claims and Count I of its counterclaims.

The Court heard argument on these motions on May 5, 1995. For the reasons that follow, the Court (1) denies Offshore's motion for summary judgment against BBC as to Counts I and II of BBC's complaint; (2) grants Offshore's motion for summary judgment against BAF as to Count I and denies Offshore's motion as to Counts II and III of BAF's complaint; (3) denies BAF's motion for partial summary judgment on Count I of its complaint; (4) grants BBC's motion for partial summary judgment on Count I of its complaint; (5) grants BBC's motion for partial summary judgment on Count I of Offshore's counterclaim; (6) grants BBC's motion to dismiss Offshore's counterclaims; (7) grants BAF's motion to dismiss Offshore's counterclaims; and (8) denies Offshore's motion for summary judgment as to Count I of its counterclaims.

## I. STANDARD OF REVIEW

■ Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine

---

1. The facts and events leading up to this lawsuit are discussed in the Court's Opinion of October 21, 1994, granting the preliminary injunction.

See *Barnstead Broadcasting Corp., et al., v. Offshore Broadcasting Corp.,* 865 F.Supp. 2 (D.D.C. 1994).

issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Disputed material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■■■ "In cases in which the dispositive issue involves the construction of a contract, summary judgment may be appropriate if the provisions of the contract are unambiguous." *Davis v. Chevy Chase Financial Ltd.,* 667 F.2d 160, 169 (D.C.Cir.1981); *see America First Inv. Corp. v. Goland,* 925 F.2d 1518, 1520 (D.C.Cir.1991); *Farmland Industries, Inc. v. Grain Bd. of Iraq,* 904 F.2d 732, 736 (D.C.Cir.1990). Furthermore, it is settled that whether a contract term is ambiguous is a question to be determined by the court. *Carey Canada, Inc. v. California Union Ins. Co.,* 708 F.Supp. 1, 4 (D.D.C.1989). An agreement is considered ambiguous only if it is reasonably susceptible to more than one interpretation. *Gustafson v. Max Fish Plumbing & Heating Co.,* 622 A.2d 450, 452 (R.I.1993).

■■■ Under Rhode Island law, the Court need not look beyond the language of the contract if it determines that the document's terms are clear and unambiguous. *W.P. Assocs. v. Forcier, Inc.,* 637 A.2d 353, 356 (R.I. 1994).[2] The Court, nevertheless, may "consider the situation of the parties and the accompanying circumstances at the time the contract was entered into, not for the purpose of modifying or enlarging or curtailing its terms, but to aid in the interpretive process and to assist in determining its meaning." *W.P. Assocs. v. Forcier, Inc.,* 637 A.2d at 356.

■■■ In considering the motions to dismiss filed by BBC and BAF, the Court must assume the truth of the factual allegations of the counterclaim and liberally construe them in favor of Offshore. It may dismiss the counterclaim for failure to state a claim only if it appears that no set of facts can be proved in support of the claim that would entitle Offshore to relief. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 325, 111 S.Ct. 1842, 1844–45, 114 L.Ed.2d 366 (1991); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). The counterclaim-plaintiff must be given every favorable inference that may be drawn from its factual allegations. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Summary dismissal is only appropriate if it appears beyond a reasonable doubt that no set of facts proffered in support of the counterclaim would entitle the claimant to relief. *Martin v. Ezeagu,* 816 F.Supp. 20, 23 (D.D.C.1993); *see Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987).

## II. ANALYSIS

Because they raise threshold questions, the Court first considers Offshore's motions for summary judgment related to the 1990 written contract. As to BBC, Offshore maintains that the contract has been fully performed and that BBC's claims therefore are moot. As to BAF, Offshore maintains that it lacks standing to enforce Offshore's obligations under the 1990 written contract. The relevant undisputed facts are that, pursuant to the Court's October 21, 1994 Order, Offshore withdrew its Informal Objection to BBC's permit assignment application, BBC assigned its construction permit to BAF by written agreement on December 30, 1994, and there is no oral or written agreement between BAF and BBC that assigned to BAF BBC's interest in the 1990 written contract with Offshore.

### A. Mootness

■■■ The mootness doctrine limits the Court's jurisdiction to "present live controvers[ies] of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *British Caledonian Airways Ltd. v. Bond,* 665 F.2d 1153, 1157 (D.C.Cir.1981) (citations omitted). Offshore contends that it has fully performed its obligations under the 1990 written contract, and

---

**2.** The 1990 written contract specifies, and the parties are in agreement, that it is to be construed in accordance with the substantive laws of the State of Rhode Island. BBC Mot. for Summ. J., Ex. 1.

that BBC no longer has an interest in Offshore's conduct related to BAF's construction permit. Accordingly, it maintains that "[a] determination ... of the legal issues tendered by the parties is no longer necessary" to avoid the alleged injury. *DeFunis v. Odegaard,* 416 U.S. 312, 317, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974). BBC responds that, although its construction permit has been assigned to BAF, it retains an interest in having BAF construct the television station unhindered by Offshore because the permit assignment agreement guarantees William Barnstead, the owner of BBC, the valuable opportunity to produce a weekly public affairs show on BAF's station for five years. If the station is never built, Mr. Barnstead will lose this opportunity for which he bargained.

The Court recognized this interest in its opinion granting the preliminary injunction, finding that there would be no adequate remedy at law for the loss of the opportunity to produce a public affairs program. *Barnstead Broadcasting Corp., et al., v. Offshore Broadcasting Corp.,* 865 F.Supp. at 7–8. This interest remains a live one, at least until the television station is constructed.[3] Offshore's Motion for summary judgment as to Count I of BBC's complaint therefore is DENIED.[4]

### B. Standing

Offshore argues that BAF lacks standing to enforce the 1990 written contract because BAF is neither an assignee nor a third-party beneficiary of the contract. It is undisputed that there is no oral or written agreement assigning BBC's interest in the 1990 written contract to BAF. BAF points out, however, that the 1990 written contract is expressly binding on "successors and assigns," and what it terms the "relevant interest" in this case, the permit, has been assigned. Citing the Restatement, BAF argues that finding it to be an intended beneficiary of the contract "is appropriate to effectuate the intention of the parties" and "the circumstances indicate that the promisee [BBC] intends to give the beneficiary [BAF] the benefit of the promised performance." Restatement (Second) of Contracts § 302 (1981).

The Rhode Island Supreme Court recognizes the general rule that only intended third party beneficiaries may maintain an action for damages resulting from a breach of contract between two other contracting parties. *See Davis v. New England Pest Control Co.,* 576 A.2d 1240, 1242 (R.I. 1990); *Finch v. Rhode Island Grocers Ass'n,* 93 R.I. 323, 175 A.2d 177 (1961) (looking to Restatement (Second) of Contracts to determine the rights and status of third party beneficiaries). Incidental third party beneficiaries of a contract do not have a right to recover on the contract in the event of a breach. Restatement (Second) of Contracts § 302 cmt. e (1981).

While the Restatement states that "[i]t is not essential to the creation of the right in an intended beneficiary that he be identified when a contract containing the promise is made," Restatement (Second) of Contracts § 308, the Restatement test does require that the parties "directly and unequivocally intend to benefit a third party in order for that third party to be considered an intended

---

3. Offshore argues that, in light of FCC regulations limiting the extension and assignment of television station construction permits, the Court should read a six month duration into the 1990 written contract. *See* Offshore Opp'n to Summ. J. at 14–15. As the Court discusses below, the FCC regulations relied upon by Offshore did not preclude the possibility that BBC's permit could be extended or assigned. The Court therefore finds that it is not reasonable to limit the life of the 1990 written contract to six months after it was signed.

4. Offshore has also raised an argument that Count II of BBC's complaint is barred by the statute of frauds. Offshore Opp'n to Summ.J. at 17 n. 3.; Offshore Reply in Supp. of Summ.J. at 20 n. 7. Counsel for BBC explained at oral argument that BBC did not respond to Offshore's suggestion because there was no legal argument regarding the statute of frauds in Offshore's opposition memorandum. The Court is of the opinion that this issue has not been properly briefed by either party. The Court therefore DENIES Offshore's summary judgment motion on Count II of BBC's complaint as well. The parties may consider whether they wish to seek leave to file supplemental dispositive motions on the statute of frauds issue in the course of future proceedings in this case.

beneficiary." *Forcier v. Cardello*, 173 B.R. 973, 985 (D.R.I.1994). As the court in *Forcier* noted, a decision of the Rhode Island Superior Court recently provided a framework for the analysis of whether a third party beneficiary is an intended beneficiary. *Id.* at 985 (citing *Rhode Island Depositors Economic Protection Corp., et al. v. Ernst & Young, et al.*, C.A. No. 92–1120 (R.I.Super.Ct., March 11, 1994)). The court first observed that there is a presumption that " 'parties enter into a contract for their own benefit and not for the benefit of a third party.' " *Id.* The court explained that a " 'promisor's mere awareness that someone other than the promisee may derive a benefit from the promisor's performance under the contract is insufficient to cloak the third party with the mantle of an intended beneficiary.' " *Id.* at 986 and n. 5.

In this case, the 1990 written contract between BBC and Offshore does not name any third party as beneficiary of the 1990 written contract, nor does any other contract or agreement between the parties. The statements of material fact submitted by both BBC and Offshore indicate that no third party was expressly considered during negotiations. While the 1990 written contract is binding on "successors and assigns," it is undisputed that BAF is neither; BAF is not a related entity to BBC and the 1990 written contract was never assigned to BAF. Although the construction permit was assigned to BAF, the Court is not persuaded that the benefit of the 1990 written contract is a necessary consequence of that assignment. While nothing in the contract prohibited assignment of the construction permit to unrelated third parties, the possibility of such an assignment does not manifest a clear intent by of the parties to the 1990 written contract to benefit a third party such as BAF. "Mere knowledge or awareness of a potential benefit [to a third party] cannot, without more,

prove an explicit intent to confer a benefit [on that party]...." *Forcier, et al. v. Cardello, et al.*, 173 B.R. at 986.

BAF has not filed any affidavits, documentary evidence or other submissions contradicting Offshore's arguments on this issue and has not demonstrated an intent of the parties to the 1990 written contract to benefit a third party such as itself. *See Forcier, et al. v. Cardello, et al.*, 173 B.R. at 985. Its opposition consists of no more than mere unsupported assertions and is not supported by any competent evidence setting forth specific facts on this issue as required by Rule 56(e), Fed.R.Civ.P. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). For these reasons, the Court finds that BAF does not have standing to pursue Count I of its complaint and that Offshore's cross motion for summary judgment as to Count I of BAF's complaint therefore is GRANTED.[5]

### C. Contract Interpretation

 BBC has moved for summary judgment on Count I of its complaint on the grounds that the 1990 written contract is clear and unambiguous and that Offshore's filing of an Informal Objection to BBC and BAF's permit assignment application to the FCC breached the contract.[6] Offshore contends that the 1990 written contract is not a full integration of the parties' agreements in 1990 and that the Court, therefore, should consider parol evidence showing that BBC separately agreed to complete construction of its television station within six months of the signing of the 1990 contract.

 "Whether there is an integrated agreement is to be determined by the court as a question preliminary to ... interpretation or to application of the parol evidence rule." Restatement (Second) of Contracts,

---

**5.** This determination does not mean that BAF lacks standing to pursue its other claims related to the alleged 1994 oral agreement. To the extent that Offshore referenced a statute of frauds argument as grounds for dismissal of these claims, the Court concludes that those arguments were not presented against BAF in Offshore's motion for summary judgment on Counts I, II and III of BAF's complaint.

**6.** BAF also moved for partial summary judgment on these grounds. Because the Court has found that BAF does not have standing to pursue its breach of the 1990 written contract claim, its motion for partial summary judgment on Count I of its complaint is DENIED.

§ 209 (1981). A written agreement which reasonably appears to be complete and specific is presumed to be integrated unless there is evidence that the writing did not constitute a final expression of the parties' agreement. *Id.* The Court therefore may consider relevant extrinsic evidence on the question of whether the 1990 written contract was intended by the parties to be a full statement of the parties' agreements. *Id.* at cmt. c.

For extrinsic evidence that the 1990 written contract does not contain the complete agreement of the parties, Offshore relies on the affirmations of Raymond A. Yorke, its owner, and Lawrence N. Cohn, its former FCC counsel. Messrs. Yorke and Cohn assert that the 1990 written contract was one part of a series of agreements that required BBC, Offshore and the FCC to take certain actions. Offshore Opp., Ex. 1, 3. Mr. Cohn recounts meetings at which representatives of BBC were present and at which FCC staff informed the parties that no extensions would be granted and no assignments permitted. Offshore insists that a parallel oral agreement resulted from these meetings and negotiations. Mr. Yorke was not present at the meetings and relies in his affirmation exclusively on what Mr. Cohn told him had occurred. Affirmation of Raymond A. Yorke at ¶ 10.

BBC persuasively demonstrates, however, that none of the statements in the Yorke and Cohn affirmations show the consummation of an oral agreement. *See* BBC Reply in Supp. of Summ. J. at 4–8. BBC's silence in the face of statements by FCC staff that the FCC would not grant extension applications or approve assignment applications is not an agreement that BBC would not seek an extension or to assign the construction permit. *See, e.g., Kenney Mfg. Co. v. Starkweather & Shepley, Inc.,* 643 A.2d 203, 208 (S.Ct. R.I. 1994). In addition, the Court notes that Mr.

Yorke's affirmation is not consistent with his earlier affirmation in which he states that "[t]he foregoing agreement between [BBC] and Offshore was reduced to writing and entered into on November 20, 1990." Affirmation of Raymond A. Yorke (October 17, 1994) at ¶ 11. The 1990 written contract appears complete and specific on its face. The Court therefore concludes that there was no 1990 oral agreement and that the 1990 written contract is a fully integrated agreement.[7] Accordingly, the Court will not rely on parol evidence in construing the terms of the 1990 contract.

Offshore argues that, even if fully integrated, the 1990 written contract is ambiguous because applicable FCC rules, regulations and policies constitute implied terms in every contract, *Citizens for Preservation of Waterman Lake, et al. v. Davis,* 420 A.2d 53, 57 (R.I.1980); *Sterling Engineering & Const. Co. v. Town of Burrillville Housing Authority,* 108 R.I. 723, 279 A.2d 445 (1971), and because the relevant rules, regulations and policies prohibited extensions and assignments of the construction permits. BBC has effectively demonstrated that permit extensions were in fact permissible under FCC rules and that such extensions were in fact granted. *See* 47 C.F.R. § 73.3534(b). Conceding that assignment is generally not permitted after an extension, BBC points out that this rule may be suspended by the FCC. 47 C.F.R. § 1.3. Furthermore, while it is asserted that FCC staff told both parties that extensions and assignments of the construction permits would be prohibited, these informal statements by FCC staff do not have legal consequences. *State of Oregon,* 8 F.C.C.R. 3558, 3562 n. 6 (1993); *Clinton, Saint Pauls & Southern Pines,* 6 F.C.C.R. 5866 (1991). The facts before the Court demonstrate that both extensions and assignments were permitted in this case.[8] The

---

**7.** The Court finds irrelevant the absence of an integration provision in the 1990 written contract.

**8.** Offshore also contends that the 1990 agreement does not mention a material term of the agreement, that the FCC grant the parties' applications prior to the obligations under the contract arising. This omission alone, it contends,

creates ambiguity. *Aetna Casualty & Surety Co. v. Farr,* 594 A.2d 379, 389 (R.I.1991). Nevertheless, Offshore's own characterization of the multi-part agreement between the FCC, BBC and Offshore describes a scenario wherein the 1990 contract would be signed before the FCC granted either of the parties' applications. There is no evidence before the Court that the FCC agreed to be bound to take any action with respect to the

Court finds that the only reasonable interpretation of the 1990 written contract is that it prohibits neither extensions nor assignments of the construction permit.

■ The provisions of the 1990 written contract being susceptible of only one interpretation, the Court finds that the agreement is clear and unambiguous. The agreement prohibits the filing of "any pleading or document *of any kind ... regarding* the construction" of BBC's station. Offshore's Informal Objection to the assignment clearly was a document "regarding the construction" of BBC's station. Furthermore, the 1990 written contract also obligates Offshore not to "interfere *in any way* " with the construction of the station. The filing of an Objection to the assignment is just such an interference. Offshore breached its obligation under the 1990 contract by filing an Informal Objection to the assignment application in this case. The Court therefore GRANTS BBC's motion for partial summary judgment on Count I of its complaint.

### D. Offshore's Counterclaims

Offshore's counterclaims relate to BBC's alleged breach of the 1990 written contract, breach of an alleged 1990 oral agreement, fraud and deceit related to the negotiation and consummation of those two agreements, and interference with business relations. BBC has moved to dismiss these counterclaims (1) on statute of limitations grounds, (2) on the ground that Offshore has failed to plead the fraud and deceit counterclaims with the particularity required by Rule 9(b), Fed. R.Civ.P., and (3) because Offshore has failed to state a claim upon which relief may be granted under Rule 12(b)(6), Fed.R.Civ.P. BBC also has moved for partial summary judgment on Count I of Offshore's counterclaim, which alleges breach of the 1990 written contract and the alleged 1990 oral contract. Offshore has moved for summary judgment on Count I of its counterclaim on the grounds that BBC's claims are moot.

As discussed above, the Court finds no evidence to support the allegation that the 1990 contract was not a fully integrated

agreement, that a separate oral agreement existed, or that applicable law prohibited extensions or assignment of FCC construction permits. There is no evidence in the record that BBC was obliged to complete construction of its television station within six months of the 1990 contract or was prohibited from seeking to assign its construction permit. BBC's motion for partial summary judgment on Count I of Offshore's counterclaim and Offshore's opposition essentially incorporate by reference or restate their arguments related to BBC's motion for summary judgment on Count I of its complaint. For the reasons stated above, the Court therefore GRANTS BBC's motion for partial summary judgment on Count I of Offshore's counterclaim and DENIES Offshore's motion for summary judgment as to Count I of its counterclaim.

■ Counts II, III, IV and V of Offshore's counterclaim state that BBC "intentionally misrepresented" that it would construct its television station within six months of the 1990 contract and that Offshore was harmed because it relied on BBC's "material misrepresentations," "fraudulent misrepresentations," "fraudulent inducement" and "deceit." Offshore Countercl. against BBC ¶ ¶ 34–35, 37–38, 40–41, 43–44.

■ BBC argues that these allegations are insufficient for two reasons: (1) "[a] mere promise to perform or not perform a future act, which is subsequently broken, is not embraced in the term [fraud]...." *Giotis v. Lampkin,* 145 A.2d 779, 781 (D.C.1958); and (2) Offshore has not met its pleading obligations under Rule 9(b), Fed.R.Civ.P, because it has not specified "what statements were made in what documents or in what context, the time and place of such statements, who made the statements, the manner in which the statements were misleading, and what the defendants obtained as a consequence of the statements." *In re Newbridge Networks Securities Litigation,* 767 F.Supp. 275, 282 (D.D.C.1991). In order to prevail on a claim of fraud, a party must establish (1) a false representation (2) in reference to a material fact (3) made with knowledge of its

parties' applications. The Court does not find any ambiguity on this basis.

falsity (4) with the intent to deceive and (5) on which action is taken in reliance upon the false representation. *U.S. for Use and Benefit of DMI, Inc. v. Darwin Const. Co.,* 750 F.Supp. 536, 541 (D.D.C.1990).

 In response to BBC's first argument, Offshore correctly responds that an allegation that a party falsely stated existing intentions is sufficient to state a claim. *U.S. for Use and Benefit of DMI, Inc. v. Darwin Const. Co.,* 750 F.Supp. at 541. Nevertheless, Rule 9(b), Fed.R.Civ.P., requires that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Offshore's counterclaim fails because Offshore has not pled any facts that enable the Court to draw an inference of fraud and because allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient. *See Kowal v. MCI Communications Corp.,* 16 F.3d at 1278; *Stebbins v. Keystone Ins. Co.,* 481 F.2d 501, 511 (D.C.Cir.1973). The Court therefore DISMISSES without prejudice Counts II, III, IV, and V of Offshore's counterclaim against BBC. Since all of Offshore's claims against BBC have been dismissed, Count VI, alleging entitlement to punitive damages cannot survive and also is DISMISSED without prejudice.[9]

 BAF moves to dismiss Count I of the counterclaim against it, alleging breach of the 1990 written contract and alleged 1990 oral agreement on the ground that it was not a party to either agreement. Offshore premised Count I of its counterclaim against BAF on the theory that BAF claimed itself to be either an assignee or third party beneficiary of the 1990 written contract. Offshore Opp'n to BAF's Mot. to Dismiss at 4–5. The Court has determined that BAF does not hold either status and thus did not take Barnstead's place in relation to the 1990 written contract. Count I of Offshore's counterclaim against BAF therefore is DISMISSED with prejudice.

9. The Court notes that Offshore may seek leave to replead its counterclaims if Offshore deter-

BAF argues that Count II of Offshore's counterclaim, alleging intentional interference with business relations, should be dismissed because Offshore has failed to allege that BAF had any knowledge of an oral agreement not to assign the construction permit to an unrelated third party. The Court has already found that Offshore is unable to demonstrate the existence of such an agreement. Count II of Offshore's counterclaim against BAF therefore is DISMISSED with prejudice.

 BAF also argues that Offshore has failed adequately to allege civil conspiracy in Count III of its counterclaim. Under both federal and District of Columbia law, civil conspiracy is not actionable in and of itself. It is not a separate tort. *Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1493–1494 (D.C.Cir.1989); *Halberstam v. Welch,* 705 F.2d 472, 476–478 (D.C.Cir.1983); *ILC Corp. v. Latino Newspaper, Inc.,* 747 F.Supp. 85 (D.D.C.1990). Rather, it is an agreement to participate in an unlawful act or a lawful act in an unlawful manner. Having concluded that the underlying torts upon which the civil conspiracy claim is based— Offshore's fraud and deceit claims—are not stated with particularity, and having dismissed those claims, it necessarily follows that the civil conspiracy count falls as well. Accordingly, Count III of Offshore's counterclaim against BAF is DISMISSED without prejudice. Since all of Offshore's claims against BAF have been dismissed, Count IV, alleging entitlement to punitive damages cannot survive and is DISMISSED without prejudice.

An Order consistent with this Opinion is issued this same day.

SO ORDERED.

### ORDER

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that Offshore's motion for summary judgment as to Counts I and II of BBC's complaint [61–1] is DENIED; it is

mines that repleading would not be futile.

FURTHER ORDERED that Offshore's motion for summary judgment as to Counts I, II, and III of BAF's complaint [61–1] is GRANTED as to Count I and DENIED as to Counts II and III. JUDGMENT is entered for Offshore on Count I of BAF's complaint; it is

FURTHER ORDERED that BAF's motion for partial summary judgment on Count I of its complaint [52–1] is DENIED; it is

FURTHER ORDERED that BBC's motion for partial summary judgment on Count I of its complaint [40–1] is GRANTED. JUDGMENT is entered for BBC on Count I of its complaint; it is

FURTHER ORDERED that BBC's motion for partial summary judgment as to Count I of Offshore's counterclaim [78–1] is GRANTED. JUDGMENT is entered for BBC on Count I of Offshore's counterclaim; it is

FURTHER ORDERED that Offshore's motion for summary judgment as to Count I of it counterclaim [61–1] is DENIED; and it is

FURTHER ORDERED that BBC's motion to dismiss Offshore's counterclaim [37–1] is GRANTED. Offshore's counterclaim against BBC is DISMISSED without prejudice; it is

FURTHER ORDERED that BAF's motion to dismiss Offshore's counterclaim [51–1] is GRANTED. Counts I and II of Offshore's counterclaim against BAF are DISMISSED with prejudice and Counts III and IV of Offshore's counterclaim against BAF are DISMISSED without prejudice; it is

FURTHER ORDERED that Offshore be and hereby is directed to refrain from any further interference with the construction of the television station authorized by the permit assigned by BBC to BAF.

SO ORDERED.

