DECISION
Before this Court are cross-motions for summary judgment brought pursuant to R.C.P. 56 by the plaintiffs, the Attorney General and the Department of Environmental Management, and the defendant, New England Ecological Development, Inc.
 FACTS and TRAVEL
On July 1, 1997, New England Ecological Development, Inc. (NEED) entered into a contract with the Rhode Island Resource Recovery Corporation (RIRRC) to deposit solid waste at the Central Landfill (Landfill) in Johnston, Rhode Island. Pursuant to the contract, NEED agreed to provide a minimum of 60,000 tons of materials to the Landfill in return for a disposal fee which decreased as the amount deposited at the Landfill increased. Section 6 of the contract stated that the waste deposited by NEED could not contain any waste generated or collected outside the State of Rhode Island (unless specifically allowed by state law.)
In January of 1998, the Landfill experienced an increase of approximately twenty-five to thirty-three percent in the amount of solid waste it received. See Affidavit of Sherry Giarusso-Mulhern. Given the increase in the amount of waste the Landfill was receiving, the operators of the Landfill began to examine the solid waste which was being deposited at the Landfill. On March 5, 1998, officials from the Rhode Island Resource Recovery Corporation observed NEED vehicles dump large loads of waste at the Landfill. The officials subsequently began an examination of the waste which revealed that portions of the loads appeared to be out-of-state trash, given the fact that letters and envelopes with Connecticut addresses were included in the loads. See Deposition of Patrick McQueeney at 16. In light of the discovery that out-of-state waste apparently was being deposited at the Landfill, the officials from Rhode Island Resource Recovery Corporation contacted the Department of Environmental Management (DEM), which began its own investigation. See Deposition of Martin Cappelli at 14. In addition to conducting surveillance, DEM also began checking loads of waste which were being delivered to the Landfill, seizing evidence of what appeared to be out-of-state waste, interviewing witnesses, and tracing seized waste back to its point of origin. The DEM investigation revealed that the seized waste originated curbside in Mansfield, Massachusetts, or at other locations outside Rhode Island where it was collected by solid waste haulers and delivered to the NEED facility located in Johnston, Rhode Island.
On September 4, 1998, the Attorney General and DEM brought suit against NEED and other disposal firms alleging that the disposal of out-of-state waste by these firms was in violation of both G.L. 1956 § 23-29-13.1 and "Rule 2B of the Rules and Regulations for the Central Landfill" which was promulgated by Rhode Island Solid Waste Management Corporation, the predecessor of the RIRRC. An amended complaint, naming only NEED as a defendant, was filed by the Attorney General and DEM on January 20, 1999.[1] In addition to the violations of G.L. 1956 §23-19-13.1 and Rule 2B of the Rules and Regulations for the Central Landfill, the amended complaint alleged that the disposal of out-of-state waste by NEED was a breach of contract and a public nuisance. The Attorney General and DEM requested that NEED be preliminarily and permanently enjoined from depositing at the Central Landfill any waste which was generated outside the State of Rhode Island.
On January 11, 1999, defendant filed a motion for summary judgment alleging that the Rhode Island Resource Recovery Corporation is an indispensable party and that neither the Attorney General nor DEM has a real interest in the case as defined by Rhode Island Law. On April 2, 1999, in addition to an objection and accompanying memoranda, the plaintiffs filed a motion for summary judgment alleging that they are entitled to judgment as a matter of law since NEED admitted violating G.L. 1956 § 23-19-13.1, the regulations promulgated thereto, and their contract with the Rhode Island Resource Recovery Corporation. The defendant objected to the motion on April 9, 1999.
 STANDARD FOR SUMMARY JUDGMENT
Summary judgment is a drastic remedy which should be cautiously applied. Boland v. Town of Tiverton, 670 A.2d 1245, 1248 (R.I. 1996). When a trial justice is ruling on a motion for summary judgment, the only question before him or her is whether there is a genuine issue of any material fact which must be resolved. Rotelli v. Catanzaro, 686 A.2d 91 (R.I. 1996). If no genuine issue of material fact exists, the court must then determine whether the moving party is entitled to judgment as a matter of law. Alfano v. Landers, 585 A.2d 651, 652 (R.I. 1991). Summary judgment should be granted only if an examination of all the pleadings, affidavits, admissions, answers to interrogatories, and other materials, viewed in a light most favorable to the party opposing the moving party, reveals no genuine issue of material fact. McPhillips v. Zayre Corp.,582 A.2d 747, 749 (R.I. 1990).
A party opposing a motion for summary judgment has an affirmative duty to set forth specific facts that show that there is a genuine issue of material fact to be resolved at trial.Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996). "A party opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions, or mere legal opinions." Hale v. Marshall Contractors, Inc.,667 A.2d 1252, 1254 (R.I. 1995). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v. Almac's, Inc.,623 A.2d 971, 972 (R.I. 1993).
 DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
In support of its motion for summary judgment, defendant argues that neither the Attorney General nor DEM is a real party in interest. Specifically, defendant contends that not only is RIRRC the real party in interest but it is also an indispensable party in that RIRRC operates and maintains the Central Landfill, RIRRC contracted with the defendant, and RIRRC has the statutory obligation to oversee the disposal of solid waste in Rhode Island.
In objection to the motion, plaintiffs allege that the State of Rhode Island, which is represented by the named plaintiffs, is a real party in interest since it is authorized to pursue the action by statute and because it has a significant interest in the outcome of the litigation, in that the State is acting as guardian and trustee to preserve a limited resource for the people of the State of Rhode Island. Furthermore, plaintiffs contend that RIRRC is not an indispensable party since a viable judgment with affirmative consequences can be rendered without unfairly prejudicing either defendant or RIRRC.
 Counts I and II — Violation of G.L. 1956 § 23-19-13.1 and Rule 2B of the Rules and Regulations of the Central Landfill
In count I of their complaint, plaintiffs allege a violation of G.L. 1956 § 23-19-13.1 which states that "[n]o person, firm, or corporation engaged in the business of collecting and disposing of solid waste shall deposit solid waste that is generated or collected outside the territorial limits of this state at the central landfill." In count II of their complaint, the plaintiffs allege that the disposal of out-of-state waste at the Central Landfill was a violation of Rule 2B of the Rules and Regulations of the Central Landfill. According to the plaintiffs, the Attorney General's authority to institute and maintain the present action, for the violation of G.L. 1956 § 23-19-13.1
and Rule 2B, is conferred by the State Environmental Rights Act (G.L. 1956 § 10-20-1 et seq.) and G.L. 1956 § 23-19-28. Furthermore, plaintiffs contend that G.L. 1956 § 42-17.1-2
(a) serves as the authority pursuant to which DEM brings this action. This Court finds that neither G.L. 1956 § 10-20-3, G.L. 1956 § 23-19-28, nor G.L. 1956 § 42-17.1-2 (a) confers the requisite standing necessary for the Attorney General and DEM to maintain an action for the violations of G.L. 1956 § 23-19-13.1 and Rule 2B of the Rules and Regulations of the Central Landfill.
 Standing under G.L. 1956 § 10-20-3 and G.L. 1956 § 42-17.1-2
Section 10-20-3 (c) of the Rhode Island General Laws states that "[w]ithin the department of attorney general there shall be an environmental advocate . . . [whose] duties [include] . . . tak[ing] all possible action, including but not limited to programs of public education, legislative advocacy, and formal legal action, to secure and insure compliance with the provisions of this chapter and any promulgated environmental quality standards." Furthermore, G.L. 1956 § 42-17.1-2 (a) states that the director of DEM has the power and duty "[t]o supervise and control the protection, development, planning, and utilization of the natural resources of the state. . . ."
Section 10-20-1 of the Rhode Island General Laws, entitled "Legislative Findings and Purpose," states that "[t]he general assembly finds and declares that each person is entitled by right to the protection, preservation, and enhancement of air, water, land, and other natural resources located within the state and that each person has the responsibility to contribute to the protection, preservation, and enhancement thereof." Although the term "natural resource" is defined under the Act, the Landfill is not explicitly included in the definition.[2] However, in the context of a commerce clause analysis, other Courts have found that landfills are not natural resources so as to preclude the application of the market participant exception[3] to justify discrimination against the disposal of out-of-waste waste at state-run landfills. These courts concluded that landfills were a service that was the end product of a complex process created through the expenditure of money and human capital. SeeLefrancois v. Rhode Island, 669 F. Supp. 1204, 1211 (D.R.I. 1987); City Commissioners of Charles County v. Stevens,473 A.2d 12, 20 (Md. 1989); Evergreen Waste Systems, Inc. v. MetropolitanService District, 643 F. Supp. 127, 132 (D.Or. 1986). Although the Central Landfill is referred to as a "public resource," this Court finds that it is a state-created resource rather than a natural resource since landfills are not found in this State by pure fortuity and require a degree of expenditure to produce them.
Accordingly, the Central Landfill is not a natural resource which is protected by the Environmental Rights Act or by DEM. Although G.L. 1956 § 23-19-13.1 and Rule 2B of the Rules and Regulations of the Central Landfill could be viewed as environmental quality standards, the Central Landfill does not fall under the purview of the Environmental Rights Act. Since the Attorney General is only authorized to bring suit to insure compliance with the provisions of the Environmental Rights Actand any environmental quality standard, § 10-20-3, therefore, cannot serve as the authority pursuant to which the Attorney General brings this suit. (emphasis added). Furthermore, since G.L. 1956 § 42-17.1-2 (a) confers upon DEM the power and authority to protect natural resources, which the landfill is not, DEM also lacks standing.
 Standing under G.L. 1956 § 23-19-28
The Attorney General argues that standing to bring an action for violation of G.L. 1956 § 23-19-13.1 is conferred by G.L. § 23-19-28, which provides that "[t]he attorney general of the state shall have the power to bring an action in the name of the state . . . in any court of competent jurisdiction for restraining orders and injunctive relief to restrain and enjoin violations or threatened violations of this chapter, or for specific performance of the obligations of any person or municipality under this chapter." However, G.L. 1956 § 23-19-28
goes on to provide that "[p]roceedings under this chapter shall be instituted and prosecuted in the name of the corporation, (1) by the attorney general but only upon the request of the corporation. . . ." The record reflects that the instant matter was instituted and prosecuted in the name of the State, through the Attorney General and DEM, rather than in the name of the Rhode Island Resource Recovery Corporation. Furthermore, the Attorney General has failed to establish that the instant matter was instituted at the request of the Rhode Island Resource Recovery Corporation. Accordingly, the Attorney General lacks standing under G.L. 1956 § 23-19-28 to bring suit for the alleged violations of G.L. 1956 § 23-19-13.1 and Rule 2B of the Rules and Regulations of the Central Landfill.
Summary judgment shall enter for the defendant on counts I and II.
 Count III — Breach of Contract
In this count, plaintiffs contend that defendant breached its contract with the Rhode Island Resource Recovery Corporation by depositing out-of-state waste at the Central Landfill since section 6 of the contract stated that the waste deposited by NEED could not contain any waste generated or collected outside the State of Rhode Island (unless specifically allowed by state law.) Although plaintiffs recognize that they were not a direct party to the contract, they contend that the State of Rhode Island was an intended third party beneficiary to the contract. According to the plaintiffs, the Rhode Island Resource Recovery Act defined the State and its citizens as intended third party beneficiaries when it declared that:
 "the State, by creating the solid waste management corporation, [the predecessor to the Resource Recovery Corporation], and through its operating the central landfill, is a participant in the landfill services market and has entered the market for the purpose of serving the citizens, residents, and municipalities of this state." G.L. 1956 § 23-19-2 (12).
"There is a strong presumption that parties contract only for the benefit of themselves, and a contract will not be considered as having been made for the use and benefit of a third person unless it clearly appears that such was the intention of the parties." Brown v. Summerlin Associates, Inc., 614 S.W.2d 227, 229 (Ak. 1981); see Davis v. New England Pest Control,576 A.2d 1240, 1242 (R.I. 1990) (as a general rule only intended, and not incidental, third party beneficiaries can maintain an action resulting from a breach of a contract between two other contracting parties). In the past, our Supreme Court has looked to the Restatement (Second) of Contracts for guidance in determining the rights and status of third party beneficiaries.See Finch v. Rhode Island Grocers Assn., 93 R.I. 323, 330,175 A.2d 177, 181 (1961). The Restatement test essentially requires that the parties directly and unequivocally intend to benefit a third party in order for that third party to be considered an intended beneficiary.[4] Forcier v. Cardello, 173 B.R. 973, 985 (D.R.I.). "[T]he intent to benefit the third party must be clearly expressed in the contract." Blu-J Inc. v. Kemper C.P.A.Group, 916 F.2d 637, 640 (11th Cir. 1990); see People v. Curtis Davis, Architects Planners, Inc., 400 N.E.2d 918, 920 (Ill. 1980) (the intention of the parties, as evidenced by the contract, determines whether or not a third-party beneficiary may sue.)
In People v. Curtis Davis, Architects Planners, Inc.,400 N.E.2d 918, 920 (Ill. 1980), the Illinois Supreme Court found that the State of Illinois was an intended third-party beneficiary of a contract executed by the Illinois Building Authority and several architects. The court stated that the disputed contract, specifically and in its entirety, convincingly displayed the intent of the parties to make the State a direct beneficiary. The contract referred to the State as the "User" of the facility and stated that the architects had to consult with the State to ascertain the requirements of the project. Id.
Furthermore, the contract specified that the architects had to revise the drawing, specifications, and estimate in a manner satisfactory to both the State and the Building Authority. Id.
The court found that the contract demonstrated that the parties, especially the Building Authority, intended the State to be more than an incidental beneficiary. Id.
After review of the contract, this Court finds that the State of Rhode Island is not entitled to intended third-party beneficiary status under the contract. The plaintiffs have failed to establish that the intent and purpose of defendant and RIRRC in executing the contract was to confer a direct and substantial benefit upon the State of Rhode Island. Unlike the contract inCurtis Davis, there is no mention of the State of Rhode Island in the contract at issue. Rather, the contract merely sets forth the purpose of the contract, the duties, obligations, and responsibilities of both parties, and the remedies available to RIRRC in the event that the defendant deposits out-of-state or otherwise disregards the provisions of the contract or the rules of RIRRC. Since the State of Rhode Island is not an intended third-party beneficiary to the contract, the Attorney General and DEM lack the requisite standing to bring an action for breach of that contract. Accordingly, summary judgment shall enter for the defendant on count III.
 Count IV — Nuisance
In count IV of their complaint, the plaintiffs allege that the disposal of out-of-state at the Central Landfill by the defendant constitutes a public nuisance. The Attorney General contends standing exists to abate the nuisance under G.L. 1956 § 10-1-1, which provides that:
 "[w]henever a nuisance is alleged to exist, the attorney general or any citizen of the state may bring an action in the name of the state, upon the relation of the attorney general or of an individual citizen, to abate the nuisance and to perpetually enjoin the person or persons maintaining the nuisance and any or all persons owning any legal or equitable interest in the place from further maintaining or permitting the nuisance either directly or indirectly."
This Court recognizes that one of the responsibilities of the Attorney General is prosecuting a public nuisance at common law and under G.L. 1956 § 10-1-1, and therefore finds that standing exists to bring this action to abate a public nuisance. Furthermore, this Court finds that the RIRRC is not an indispensable party to the nuisance action since a viable judgment, which will establish complete relief even in the absence of RIRRC, can be entered ordering the defendant to desist from the conduct which created the nuisance if after trial nuisance is found to exist. Accordingly, defendant's motion for summary judgment in regards to count IV is denied.
 PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
The plaintiffs initially argue that they are entitled to judgment as a matter of law since NEED, by its own admission, violated G.L. 1956 § 23-19-13.1, Rule 2B of the Rules and Regulations of the Landfill and its contract with RIRRC. According to the plaintiffs, the partial removal of recyclables from solid waste does not transform the remaining waste into a Rhode Island generated product which may be deposited at the Landfill. Therefore, since the residue from NEED's recycling process consists of out-of-state waste and NEED does not dispute depositing the residue at the Landfill, the plaintiffs argue that they are entitled to summary judgment. Lastly, the plaintiffs contend that the violation of G.L. 1956 § 23-19-13.1 is an unreasonable interference with a right common to the general public and therefore constitutes a public nuisance.
As a result of this Court's determination that the plaintiffs lack standing to pursue claims under G.L. 1956 § 23-19-13.1, Rule 2B of the Rules and Regulations of the Central Landfill, and the contract between NEED and RIRRC, as alleged in counts I, II, and III of their complaint, this Court denies the plaintiffs' motion for summary judgment. Although G.L. 1956 § 10-1-1
confers standing upon the plaintiffs to maintain a nuisance action, this Court further finds that the plaintiffs are not entitled to judgment as a matter of law on count IV, the public nuisance claim.
"A public nuisance is an unreasonable interference with a right that is common to the general public: it is behavior that unreasonably interferes with the health, safety, peace, comfort or convenience of the general community." Citizens forPreservation of Waterman Lake v. Davis, 420 A.2d 53, 59 (R.I. 1980). The burden of proving a nuisance is upon the party alleging it, who must demonstrate the existence of the nuisance and that injury has been caused by the nuisance complained of.Id. (citations omitted).
After a review of the evidence presented, this Court finds that the plaintiffs have failed to sustain their burden. Although the plaintiffs contend that the defendant's disposal of out-of-state waste constitutes a nuisance, the plaintiffs have not demonstrated that this disposal has unreasonably interfered with the health, safety, peace, comfort or convenience of the general community. Furthermore, the plaintiffs have not established that the alleged disposal of out-of-state waste has caused any injury. The affidavit of the Executive Director of RIRRC indicated that the physical capacity of the Landfill is being consumed rapidly by what appears to be waste having its origins outside the State of Rhode Island and that at the current rate of waste, the operating life of Phase III of the Landfill may be expected to end in the year 1999 rather than 2001 as originally expected. See Affidavit of Sherry Giarusso-Mulhem. However, there is no definitive evidence that Phase III will close earlier than expected or that the premature closure would be due to the disposal of out-of-state waste rather than the result of increased waste disposal in response to the "put or pay contracts" into which the RIRRC had entered. As the plaintiffs have failed to satisfy their burden, their motion for summary judgment on count IV is denied.
Accordingly, after review of the memoranda and other materials properly before the Court and after consideration of oral argument thereon, this Court grants defendant's motion for summary judgment on counts I, II, and III of plaintiffs' complaint and denies defendant's motion with respect to count IV. This Court denies the plaintiffs' motion for summary judgment in its entirety.
Counsel shall prepare and submit an appropriate Order for entry in accordance herewith.
[1] The other disposal firms were dropped as defendants since they agreed by stipulation to be enjoined from depositing out-of-state waste at the Landfill and to pay the combined amount of $85,000 to the Rhode Island Environmental Response Fund.
[2] A natural resource is defined as a natural resources as including, but limited to, all mineral, animal, botanical, air, water, land, timber, soil, quietude, and recreational resources. G.L. 1956 § 10-20-2 (3).
[3] The Supreme Court had held that a State or local government is not subject to the restrictions of the Commerce Clause when it acts as a "market participant" rather than a "market regulator."See Camps Newfound/O'watonna Inc. v. Town of Harrison, 117 S.Ct. 1590, 1606 (1997); see also Lefrancois v. State of Rhode Island,669 F. Supp. 1204, 1208 (D.R.I. 1987). A state acts as a market participant when it acts through a state-owned, and state-financed, entity or program. See Reeves, Inc. v. Stake, 100 S.Ct. 2271 (1980). When operating this way, a state may take measures designed at ensuring that the benefits of the state program are limited to those who fund the state treasury which fund the program. Id.
[4] Section 302 of the Restatement (Second) of Contracts
contains a test to determine the difference between intended and incidental third party beneficiaries. Section 302 provides:
 "(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right of performance in the beneficiary is appropriate to effectuate the intention of the parties and either
 (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
 (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the intended promise.
 (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary." See Forcier v. Cardello, 173 B.R. 973, 985 (D.R.I. 1994).